United States District Court
District of Massachusetts

| | |
|---|---|
| **Oscar Brookins,** *individually and as the representative of a class of similarly situated persons,*<br><br>       Plaintiff,<br><br>       v.<br><br>**Northeastern University et al.,**<br><br>       Defendants. | Civil Action No.<br>22-11053-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

The late, renowned attorney-investor Charlie Munger once quipped that "the big money is not in the buying and selling, but in the waiting."

This action arises out of allegations that plaintiff, Oscar Brookins ("Brookins" or "plaintiff"), while waiting for "big money" to compound in his retirement account, has been short-changed by defendants, Northeastern University ("Northeastern") and Northeastern University 403(b)-Investment Committee ("the Committee" and collectively, "defendants"), in their management of the Northeastern University Retirement Plan ("the Plan"). Plaintiff is a current or former employee of Northeastern and a Plan participant. He brings the suit on behalf of himself and a putative class of similarly situated Plan participants.

-1-

Pending before the Court is defendants' motion to dismiss (Docket No. 54). For the reasons that follow, the motion will be allowed, in part, and denied, in part.

## I. Background

The suit concerns purported lapses in the management and oversight of the Plan, which is administered by the Committee and is sponsored by Northeastern. It is a "defined contribution plan," meaning that a participant's account is comprised of his or her contributions and matching contributions of Northeastern. Upon enrolling, a participant has the choice of a custodian, namely, Fidelity Management Trust Company ("Fidelity") or Teachers Insurance and Annuity Association ("TIAA"). The Plan includes over 60 investment options, including as relevant here, 13 Fidelity Freedom Target Date Funds ("Fidelity Freedom Funds"), 11 TIAA Lifecycle Target Date Funds ("TIAA Lifecycle Funds"), the TIAA Real Estate Account and the College Retirement Equities Fund Stock Account ("CREF Stock Account").

Plaintiff contends that Plan administrators violated their duty of prudence and Northeastern failed to monitor plan fiduciaries, in violation of Sections 409 and 502 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1109, 1132 ("ERISA"). Those purported breaches allegedly caused the retirement accounts of plaintiff and other similarly

-2-

situated Plan participants to incur excessive fees and underperform. Two particular fees warrant further examination: recordkeeping fees and investment management fees.

Plaintiff alleges that Plan participants have been forced to pay excessive recordkeeping fees. In exchange for a fee, TIAA and Fidelity provide a "suite" of administrative services to Plan participants which include tracking participant account balances and delivering communications to accountholders. Purportedly, the market for providing such "recordkeeping" services is highly competitive. There are two payment models for recordkeeping fees: 1) payment by the plan sponsor (e.g., Northeastern) and, as is the case here, 2) payment from Plan assets. The latter model is referred to as "revenue sharing."

Plaintiff also contends that defendants have caused plan participants to incur excessive investment management fees which are expenses associated with holding a particular investment. They are expressed in terms of an "expense ratio" which reflects the fee amount as a percent of assets invested in the fund (e.g., a fund with an expense ratio of 0.1% denotes that an investor will pay $1 for every $1,000 invested in that fund). In his claims concerning investment management fees, plaintiff focuses on the TIAA Real Estate Account and the Fidelity Freedom Funds.

All together, plaintiff's theories of imprudence fall into four categories: 1) excessive recordkeeping fees, 2) excessive investment management fees, 3) investment underperformance and 4) a challenge to TIAA's custodianship based upon a subsidiary's marketing practices.  Each will be addressed in turn.

II.  **Motion to Dismiss**

   **A. Legal Standard**

   To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

   When rendering that determination, a court may consider certain categories of documents extrinsic to the complaint "without converting a motion to dismiss into a motion for summary judgment." Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  For instance, a court may consider documents of

-4-

undisputed authenticity, official public records, documents central to a plaintiff's claim and documents that were sufficiently referred to in the complaint. Watterson, 987 F.2d at 3.

A court may not disregard properly pled factual allegations in the complaint even if actual proof of those facts is improbable. Ocasio-Hernandez, 640 F.3d at 12. Rather, the court's inquiry must focus on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13.

**B. Analysis**

    **1. Breach of Duty of Prudence**

Plaintiff asserts that defendants have breached the fiduciary duty of prudence by, inter alia, subjecting plaintiff and other Plan participants to excessive recordkeeping and investment management fees and by failing to eliminate underperforming investment options.

ERISA sets forth a duty of prudence which requires fiduciaries such as defendants to act:

> with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1)(B). The test of prudence looks to conduct and not investment performance. See Ellis v. Fidelity

-5-

Mgmt. Trust Co., 883 F.3d 1, 10 (1st Cir. 2018). Accordingly, the duty requires fiduciaries to investigate and monitor the merits of investments properly and to divest of any that are imprudent. See Turner v. Schneider Elec. Holdings, Inc., 530 F. Supp. 3d 127, 133 (D. Mass. 2021).

### a. Recordkeeping Fees

#### i. Failure to Conduct RFP Process

Plaintiff contends that defendants failed to conduct a competitive bidding process for recordkeeping services and thus, breached the duty of prudence. Relying on two out-of-circuit decisions, defendants rejoin that they were not required to conduct a competitive request for proposal ("RFP") process and that failure to conduct such a process is insufficient to state a claim for imprudence. See Albert v. OshKosh Corp., 47 F.4th 570, 574 (7th Cir. 2022); Matney v. Barrick Gold of N. Am., 80 F.4th 1136 (10th Cir. 2023).

This session as well as two other sessions of this Court have taken a different approach, holding that failure to conduct a competitive bidding process for a substantial period could plausibly constitute imprudence. See Turner, 530 F. Supp. 3d at 137; Brown v. MITRE Corp., 2023 WL 2383772, at *4 (D. Mass. Mar. 6, 2023); Sellers v. Trustees of College, 647 F. Supp. 3d 14, 26-27 (D. Mass. 2022). The Court perceives no reason to depart from its prior approach. Competitive bidding ensures that fees

-6-

are kept as low as the market will permit, enabling plan participants to earn better returns. It is certainly plausible that failure to conduct such a process could constitute imprudence.

Defendants insist that, in any event, they have conducted a competitive bidding process. They point to the 2021 Faculty Senate Report ("the Report") which states, in passing, that the Report drafter "understand[s]" that a competitive bidding process took place. That reference is, however, insufficient to preclude a finding that defendants failed to conduct an RFP process. The drafters simply surmised that the Committee conducted an RFP process but did not confirm that it had or that any such process was substantively adequate. Accordingly, at this stage, the purported failure to conduct an appropriate RFP process remains a viable theory of breach.

### ii. Revenue Sharing Model

Plaintiff also asserts that the Plan's use of a revenue sharing recordkeeping fee model forced Plan participants to pay excessive recordkeeping fees in breach of the duty of prudence.

Defendants rely on two contentions in rebuttal: 1) plaintiff speculates as to whether recordkeeping fees were excessive based on the decision to use a revenue sharing model and 2) plaintiff fails to allege that the fees were excessive in proportion to the amount and quality of services provided.

-7-

It is true that plaintiff does not include a detailed analysis of how recordkeeping fees purportedly exceed the norm. He does contend, however, that information related to specific costs is unascertainable because fee information under the revenue sharing model is undisclosed in the disclosure form ("Form 5500").

The Court agrees that plaintiff has stated a plausible claim for excessive recordkeeping fees. It is well-established that

> if plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer.

Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 598 (8th Cir. 2009); see also Tracey v. Massachusetts Inst. of Tech., 2017 WL 4453541, *11 (D. Mass. Aug. 31, 2017).

The Court accepts as true plaintiff's assertion that the recordkeeping fees determined by a revenue-sharing model are not publicly disclosed and remain within defendants' possession. The parties and the Court agree that use of a revenue-sharing model is not per se imprudent but other allegations in the complaint are sufficient for the Court to determine that a claim for imprudence based on the revenue-sharing recordkeeping fee model here is plausible.

As discussed supra, plaintiff alleges that Plan administrators failed to conduct a competitive bidding process. See also Sellers, 647 F. Supp. 3d at 26. Plaintiff also asserts that defendants, who administer a defined contribution plan among the very largest investors, failed to leverage its bargaining power to bring down costs. Those allegations, in conjunction with the vagueness of the fees collected under the revenue sharing model, make plausible the inference that defendants'

> overall decision-making, resulted in...the imposition of excessive administrative and record keeping fees.

Brown, 2023 WL 2383772, at *4 (citing Matousek v. MidAmerican Energy Co., 51 F.4th 274, 278 (8th Cir. 2022)). The motion to dismiss with respect to recordkeeping fees will be denied.

### b. Investment Management Fees and Underperformance

Plaintiff also alleges that investment management fees paid by defendants were imprudent resulting in the underperformance of several funds offered by the Plan. The pleadings focus on the fees and performance of the TIAA Real Estate Account, CREF Stock Account and Fidelity Freedom Funds.

As an initial matter, defendants contend that claims related to investment management fees and fund underperformance must fail because plaintiff has not compared the assets at issue

with a "meaningful benchmark."  Several Circuit Courts of Appeal have held that at the motion to dismiss stage

> a complaint cannot simply make a bare allegation that costs are too high, or returns are too low...[r]ather, it must provide a sound basis for comparison—a meaningful benchmark.

Davis v. Washington Univ. in St. Louis, 960 F.3d 478, 484 (8th Cir. 2020) (internal quotations and citations omitted); see also Matney, 80 F.4th at 1148.

The First Circuit Court of Appeals ("First Circuit"), however, has yet to consider the so-called "meaningful benchmark" standard and several sessions of this Court have rejected it.  While it may seem intuitive to a professional investor to evaluate fund performance and fees in the context of analogous "benchmark" funds, this Court agrees with District Judge William G. Young of this Court that evaluating the suitability of benchmarks is "inappropriate at the motion to dismiss stage." Sellers, 647 F. Supp. 3d at 30 (internal quotation and citation omitted) (alteration in original).  To engage in meaningful benchmark analysis, this Court would be required to consider the merits substantively in a manner that would conflict with the Court's obligation to draw all reasonable inferences in favor of the plaintiff. See Decotiis v. Whittemore, 635 F.3d 22, 27 (1st Cir. 2011).

### i. TIAA Real Estate Fund

The dispute over investment management of the TIAA Real Estate Fund illustrates the futility of factfinding at the motion to dismiss stage.  Plaintiff asserts that the 0.77% expense ratio of the TIAA Real Estate Fund far exceeds typical real estate funds which have expense ratios between 0.59% and 0.64%.  He cites a report of the Investment Company Institute ("ICI Report") which shows that such asset-weighted average expense ratios range from 0.59% to 0.64%, depending upon the number of plan participants in a combination of real estate funds, commodity funds and individual stocks and bonds.

Defendants contend that the benchmark from the ICI Report is an improper comparator because it includes an amalgam of real estate and non-real estate assets but they fail to account for the real possibility that the expense ratios of real estate-focused funds largely resemble those of more diversified funds or funds focused on other asset classes.  The Court also credits the allegation that the structure of the fund inherently leads to higher fees.  Finally, as discussed <u>infra</u>, circumstantial evidence concerning deficiencies in defendants' process for selecting and maintaining the investment does not warrant dismissal at this stage.  While there may be appropriate grounds to discount the weight accorded to the ICI Report, they are more

suitably argued at summary judgment. See Sellers, 647 F. Supp. at 28.

### ii. Fidelity Freedom Funds

A similar story emerges with respect to the Fidelity Freedom Funds. Plaintiff alleges that those funds, which are part of the "K" share class of Fidelity offerings, charge excessive fees and should have been replaced by funds in the purportedly lower fee "K6" share class. While not denying that the K6 share class carries lower fees, defendants contend that plaintiff failed to allege that the K and K6 share classes are identical. That assertion can, however, be reasonably inferred from plaintiff's allegation that defendants "failed to move the Plan into less expensive versions of options already in the Plan" immediately before its discussion of the K and K6 share classes.

Defendants' assertion that plaintiff conceded that higher-cost share classes are always permitted to generate revenue sharing is unfounded. The Court finds no such concession in the complaint and, in fact, plaintiff contends that the revenue sharing fee model in place is imprudent.

Finally, defendants contend that "plan fiduciaries are not required to pick passive index funds over actively managed funds." While that is a legally sound contention, it does not

follow that maintaining the particular funds at issue, the K share class funds, was not imprudent as a matter of law.

### iii. CREF Stock Account

Plaintiff alleges that defendants breached their duty of prudence by maintaining the CREF Stock Account despite purported under-performance and the existence of lower-cost alternatives. Defendants contend that the Vanguard Diversified Equity Fund, the Vanguard PRIMECAP Fund and the Van guard Capital Opportunity Fund are inappropriate benchmark funds, and that plaintiff employs an artificially short timeframe for comparisons.  They also assert that bare allegations of under-performance in hindsight are insufficient to state a claim for imprudence, citing this Court's opinion in Turner.

The Court accepts as true plaintiff's contention that the three Vanguard funds have "similar underlying asset allocations" as the CREF Stock Account and thus are valid comparators. Furthermore, the Court finds that performance intervals of one, three and five years are plausibly appropriate comparison metrics at the motion to dismiss stage.  Defendants cite no First Circuit caselaw to the contrary.

Defendants are correct, however, that under-performance alone is not enough to support a claim for imprudence. See Turner, 530 F. Supp. 3d. at 133.  Nonetheless, a claim for imprudence can survive dismissal if a court can reasonably infer

-13-

"based on circumstantial factual allegations" that the process of selecting or maintaining an investment was flawed. See id. (quoting Moreno v. Deutsche Bank Ams. Holding Corp., 2016 WL 5957307, at *5-6 (S.D.N.Y. Oct. 13, 2016)).

The complaint contains several such circumstantial allegations that would render plausible a claim of imprudence. Plaintiff notes that the CREF Stock Account is the second largest investment in the Plan constituting almost one-eighth of the Plan's total assets.  It was also the subject of a recent ERISA imprudence claim that withstood a motion to dismiss in Short v. Brown University. See 320 F. Supp. 3d 363 (D.R.I. 2018).  That modicum of evidence, combined with the relatively poor performance of the asset compared to the Vanguard funds make plausible the inference that fiduciaries were on notice and failed to re-evaluate the CREF Stock Account.

### c. TIAA as a Custodian

Finally, plaintiff alleges it was imprudent, as a general matter, to maintain TIAA as a Plan custodian in light of the joint Securities and Exchange Commission-New York Attorney General investigation ("the SEC-NYAG investigation") into a TIAA subsidiary.  That investigation concerned alleged deceptive marketing practices related to "cross-selling" services to clients in TIAA-administered retirement plans.  Defendants contend that any claims arising out of the cross-selling

investigation should be dismissed because plaintiff does not allege that he or any other Plan participant was exposed to cross-selling practices.

Another session of this Court evaluated the import of the investigation to a similar ERISA suit and held that it

> does not give much weight--if any at all--to this investigation since it is not entirely relevant to the facts...of this case.

Sellers, 647 F. Supp. 3d at 26.  Plaintiff did not allege that any cross-selling occurred for Plan participants nor does he plausibly allege a connection between the investigation and TIAA as a custodian for the Plan.  Accordingly, the Court will allow the motion to dismiss to the extent that plaintiff seeks to hold defendants liable for maintaining TIAA as a custodian in light of the investigation.

### B. Failure to Monitor Fiduciaries

Finally, plaintiff's claim for failure to monitor fiduciaries is derivative of its imprudence claim. See In re Biogen, Inc. ERISA Litigation, 2021 WL 3116331, at *10 (D. Mass. Jul. 22, 2021).  Thus, to the extent plaintiff has plausibly alleged a claim for imprudence, he has also plausibly alleged a claim for failure to monitor fiduciaries.

**ORDER**

For the foregoing reasons, the motion to dismiss of defendants, Northeastern University and Northeastern University 403(b) Investment Committee, (Docket No. 54) is, as to both counts, to the extent that plaintiff seeks to hold defendants liable for maintaining TIAA as a custodian in light of the Securities and Exchange Commission-New York Attorney General investigation, **ALLOWED** but is otherwise **DENIED**.

**So ordered.**

                                              /s/ Nathaniel M. Gorton
                                              Nathaniel M. Gorton
                                              United States District Judge

Dated:  April 17, 2024