**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

Oscar T. Brookins, individually and as the representative of a class of similarly situated persons, and on behalf of the Northeastern University Retirement Plan,

Plaintiff,

v.                                                        No. 1:22-cv-11053-NMG

Northeastern University; Northeastern University 403(b) Investment Committee; and John and Jane Does 1-10,

Defendants.

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF**
**<u>CLASS ACTION SETTLEMENT</u>**

**Table of Contents**

Background ........................................................................................................................3

Summary of Proposed Settlement....................................................................................4

Argument ..........................................................................................................................5

    1. The settlement amount is fair, reasonable, and adequate. ...................................6

    2. The proposed payment to the named plaintiff is fair and reasonable. ..................8

    3. The proposed attorneys' fees and costs are fair and reasonable. ........................10

    4. Certification of a settlement class is warranted ....................................................12

    5. The proposed notice satisfies Fed. R. Civ. P. 23 .................................................15

Conclusion ......................................................................................................................16

Exhibit 1 (Settlement Agreement)

Exhibit 2 (Proposed Class Notice)

Exhibit 3 (Proposed Order)

Exhibit 4 (Affidavit of Stephen Churchill)

Pursuant to Fed. R. Civ. P. 23, Plaintiff Oscar T. Brookins, individually and in his representative capacity for a class of similarly situated persons and on behalf of The Northeastern University Retirement Plan ("Plan"), requests preliminary approval of a proposed settlement that resolves the above-captioned class action lawsuit. A copy of the settlement agreement ("Agreement") is attached as Exhibit 1. Plaintiff also seeks approval of a proposed notice to be sent to class members ("Class Notice"), a copy of which is attached as Exhibit 2. A proposed order is attached as Exhibit 3.

**Background**

On June 30, 2022, Plaintiff commenced this Action, challenging the Defendants' exercise of fiduciary duties as to the Plan, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA). The Complaint alleges two principal claims: that the Defendants, acting through Northeastern 403(b)'s Investment Committee ("Committee"), failed to monitor allegedly excessive fees charged by the Plan's two recordkeepers (TIAA and Fidelity), and that the Defendants failed to monitor the Plan's investment options. The Complaint defines the class as, "All persons, except Defendants and their immediate family members, who were participants in, or beneficiaries of the Plan, at any time between June 30, 2016 through the date of judgment."

On September 15, 2022, the Defendants filed a motion to dismiss. (ECF No. 22). Plaintiff opposed the motion (ECF No. 25), and the parties subsequently filed multiple notices of supplemental authority (ECF Nos. 29, 30, 37, 41, 42). On November 20, 2023, the case was reassigned. (ECF No. 47). On December 20, 2023, the Court ordered the Defendants to file a renewed, consolidated motion to dismiss (ECF No. 53), which the Defendants did on January 5, 2024 (ECF No. 54). Plaintiff again opposed the motion. (ECF No. 56). On April 17, 2024, the Court denied the motion to dismiss, except to the extent Plaintiff sought to hold Defendants

liable for maintaining TIAA as a recordkeeper in light of a Securities and Exchange Commission-New York Attorney General investigation (ECF No. 73). On August 16, 2024, the Court denied Defendants' motion to certify that order for interlocutory appeal. (ECF No. 78).

Following those rulings, and in order to explore a voluntary resolution, the Defendants voluntarily produced extensive documentation requested by Plaintiff, including information considered by the Committee from 2016 onwards, agendas and minutes of Committee meetings, and the responses to and analysis of a request for proposals to potential recordkeepers in 2018. The Defendants also arranged for an interview of personnel from the Committee's investment advisor, SageView Advisory Group ("SageView").

On March 10, 2025, the Court notified the Parties of an initial scheduling conference, to be held on April 15, 2025. (ECF No. 79). Because the Parties already had begun the process of exploring a negotiated resolution, they filed a motion to continue the conference, which the Court allowed. (ECF Nos. 80, 81). The Court ultimately held an initial scheduling conference on July 15, 2025, (ECF No. 92), scheduling a trial for July 2026.

After exchanging and discussing initial positions as to settlement, the Parties and their counsel participated in a day-long, in-person mediation on August 18, 2025, with Judge Mitchell Kaplan (Ret.), a former justice of the Massachusetts Superior Court. As a result of the mediation, the Parties reached an agreement as to the material terms of a classwide settlement.

**Summary of Proposed Settlement**

The Agreement provides that the above-captioned action be settled by a payment of $725,000 ("Gross Settlement Amount"), thereby avoiding the need for further litigation. The Agreement proposes that the net settlement proceeds, after fees and costs, be allocated to members of the proposed settlement class based on the amount of assets they held in the Plan

during the class period. That allocation is equitable, because fees were charged as a percent of a participant's assets.

The Agreement further proposes that one-third of the Gross Settlement Amount be allocated for attorneys' fees and costs, that an additional amount be allocated for administrative expenses of the settlement, including costs for a required review by an independent fiduciary,[1] fees for a third-party settlement administrator and associated recordkeeper costs, and a modest service award of $5,000 for the named plaintiff.

The Agreement also provides that the Defendants will continue to retain the services of a qualified consultant to advise the Committee as to the Plan's recordkeeping and administrative fees and services and the Plan's investments for a period of five years.

Additional details regarding the proposed settlement are set forth in the Agreement itself, which is attached as Ex. 1.

## Argument

A class action may not be settled or compromised without the approval of the Court. Fed. R. Civ. P. 23(e). At the preliminary approval stage, a court should determine whether there is cause "to submit the [settlement] to class members" and hold a later hearing "as to its fairness." *In re Traffic Executive Ass'n,* 627 F.2d 631, 634 (2d Cir. 1980). After the notice period, the Court can hold a hearing to consider final approval in light of the class members' response to the notice and all other relevant information.

---

[1] The independent fiduciary will be charged with determining whether to approve and authorize the settlement on behalf of the Plan, pursuant to Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended.

**1.    The proposed settlement is fair, reasonable, and adequate.**

It is well established that settlements are favored. *Newberg and Rubenstein on Class Actions*, §13.44 (6th ed.) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals."). *See also E.E.O.C. v. Astra U.S.A., Inc.*, 94 F.3d 73 8, 744 (1st Cir. 1996) ("We do not doubt that public policy strongly favors encouraging voluntary settlement" of class action claims.).

The advantages to the parties and the courts are particularly apparent in the compromise of class actions, which are "often complex, drawn out proceedings demanding a large share of finite judicial resources." *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993). *See also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("In the class action context in particular, 'there is an overriding public interest in favor of settlement,' [which] minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources").

Before granting approval of a proposed class action settlement, the Court must find that the settlement is fair, reasonable, and adequate, guided by four factors: (1) the class representatives and class counsel have adequately represented the class, (2) the proposal was negotiated at arm's length, (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). All of these factors support approval of the proposed settlement.

First, the class representatives and class counsel have adequately represented the class. Class counsel have extensive experience with wage-and-hour and ERISA class actions, having litigated and resolved dozens of class claims in Massachusetts and other jurisdictions. (Affidavit

6

of Stephen Churchill ("Churchill Aff."), attached as Ex. 4). They conducted an extensive investigation of potential claims before filing suit. They faced and overcame an initial motion to dismiss, which required extensive briefing. They obtained and analyzed voluminous documents and records from the Defendants. And they engaged in protracted settlement discussions with the Defendants, ultimately resulting in a proposed agreement.

Second, the Agreement was negotiated at arm's length, following substantial voluntary discovery. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009) ("If the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable."). As noted above, the parties' settlement negotiations followed the production of voluminous records and data. The parties strongly disagreed as to numerous factual and legal issues, as made clear by the course of litigation in this case and by the competing arguments presented in the motion to dismiss.

Third, the proposed relief is adequate. As to the allegation of excessive recordkeeping fees, a key question is what level of recordkeeping fees the Committee could have obtained during the years 2016 onwards through prudent oversight. The Defendants' position, in short, is that the Committee did provide prudent oversight, so there was no breach of duty and no loss to Plan participants. The Plaintiff contends that various benchmark or market data would support a finding that the Committee could have obtained lower fees in what is a competitive market for recordkeeping services. Given those allegations, the alleged estimated loss to Plan participants was as high as $1,400,000, although a damages award could have been substantially lower depending on competing arguments and data. The Defendants vigorously dispute the amount of that estimated loss, arguing that changing recordkeepers could have resulted in even higher fees.

7

As to the allegations about investment options, the voluminous information produced by the Defendants, during voluntary discovery and at the mediation, indicated that the Committee was presented with and duly considered material information about the Plan's investment options. As a result, Plaintiff concluded that the prospect of success on that element of the case was sufficiently low that it did not warrant significant settlement value.

Based on these analyses, the settlement amount of $725,000 represents just over 50% of Plaintiff's best-case scenario as to the recordkeeping claim, assuming that he established liability and further assuming that his calculation of damages was successful. There are, of course, a number of other possible outcomes, including a judgment in the Defendants' favor or an award of damages *lower* than the settlement amount. Given the numerous risks that the participants avoid through a negotiated settlement – including, for example, a denial of class certification, a loss at summary judgment, a loss at trial, a loss on appeal, lower-than-expected damages, and extensive delays of litigation – the proposed settlement amount is fair, reasonable, and adequate.

Fourth, the proposed settlement will treat class members equitably relative to each other. Allocating settlement funds to class members is relatively straightforward, because fees were calculated as a percent of a participant's assets. As a result, the agreement proposes to allocate net proceeds based on each class member's plan balances during the relevant class period.

For all of these reasons, the Agreement proposes a resolution that is fair, reasonable, and adequate in light of the relevant factors.

**2.      The proposed payment to the named plaintiff is fair and reasonable.**

The Court need not make a final ruling on the proposed payment to Professor Brookins until the time of final approval, when it can assess any objections, but the proposed payment is intended to compensate him for the effort and risk associated with his role in serving as named

plaintiff, as well as his execution of a broader release. Notably, Professor Brookins, who retired after many years of service as a Professor in the Department of Economics, attended the full-day, in-person mediation in August 2025.

Courts have widely recognized that incentive awards serve an important function in promoting enforcement of state and federal law by private individuals, while encouraging class action settlements. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) ("Incentive awards are recognized as serving an important function in promoting class action settlements"), *quoting In re Lupron*, 228 F.R.D. 75, 98 (D. Mass. 2005); *In re Compact Disc Min. Adver. Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189 (D. Me. 2003) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit"). As one court noted, "[s]ervice awards [*i.e.*, incentive payments] are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. . . It is important to compensate plaintiffs for the time they spend and the risks they take." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 483 (S.D.N.Y. 2013) (citations omitted).

Incentive awards serve a particularly important role in employment-related class actions. Named plaintiffs may risk their livelihood to bring a case forward on behalf of their fellow co-workers. Courts have recognized the important role of class actions in the employment context precisely because of this fear of potential retaliation. *See, e.g., Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior because "some class members may fear reprisal"); *Guzman v. VLM, Inc.*, 2008 WL 597186, at *8 (E.D.N.Y. 2008) (noting "valid concern" that "many employees will be reluctant to participate in the action

9

due to fears of retaliation"). This same consideration makes incentive awards appropriate in employment class action settlements, as well: "[Incentive] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005).

3. **The proposed attorneys' fees and costs are fair and reasonable.**

With respect to approving the proposed award for attorneys' fees and costs, the Court need not make a final ruling until the time of final approval, when it can assess any objections. As set forth in the proposed Class Notice, Class Counsel will make available on the settlement website, within 30 days of issuance of the Class Notice, a copy of their request for an award of fees and costs. As a result, all members of the class will have an opportunity to review that request before the deadline for objections.

Courts frequently favor an award of fees from a common fund, as called for by the proposed settlement in this case. As the Supreme Court has explained:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole. . . . Jurisdiction over the fund involved in the litigation allows a Court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citations omitted).

When awarding fees from a common fund, the "percentage of the fund" method is preferred over the lodestar method. As the First Circuit observed, the percentage method is less burdensome to administer than the lodestar method. *In re Thirteen Appeals*, 56 F.3d 295, 307 (1st Cir. 1995). The court also endorsed the percentage method because it is result-oriented, and

10

therefore promotes a more efficient use of attorney time – a lodestar method may give attorneys an incentive to spend as many hours as possible on the litigation and may discourage early settlements. *Id.*

An award of one-third of the fund for fees and costs is consistent with the vital role that contingency arrangements play in making legal counsel available to individuals who cannot afford hourly fees. Unlike traditional firms that receive hourly fees on a monthly basis, employment counsel who take cases on contingency often spend years litigating cases (typically, as in this case, while incurring significant out-of-pocket expenses for experts, transcripts, travel, etc.), without receiving any ongoing payment for their work. Sometimes fees and expenses are recovered; other times, despite hundreds of hours of work, nothing is recovered. This type of practice is viable only if attorneys, having received nothing for their work on some cases, receive more in other cases than they would if they charged hourly fees. Courts have long recognized this reality. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate"); *In re Union Carbide Corp. Consumer Products Business Securities Litigation*, 724 F. Supp. 160, 168 (S.D.N.Y. 1989) ("Contingent fee arrangements implicitly recognize the risk factor in litigation and that the winning cases must help pay for the losing ones if a lawyer who represents impecunious plaintiffs, or those plaintiffs not so fully committed as to put their own money where their mouth is, will remain solvent and available to serve the public interest."). By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them.

4.     **Certification of a settlement class is warranted.**

As a starting point, certification for purposes of settlement has well-recognized practical purposes, including the issuance of notice to class members and implementation of a global settlement. *See In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir. 1995) (outlining reasons for preliminary class certification for settlement).

Beyond that practical purpose, this case satisfies the requirements for certification under Fed. R. Civ. P. 23(b)(1). Indeed, Courts have long found ERISA cases like this to be "'paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class'" given the "derivative nature of claims under § 1132(a)(2)." *Tracey v. MIT*, No. CV 16-11620-NMG, 2018 WL 5114167, at *6 (D. Mass. Oct. 19, 2018), *quoting Hochstadt v. Boston Sci. Corp.*, 708 F. Supp. 2d 95, 105 (D. Mass. 2010). *See also Hochstadt*, 708 F. Supp. 2d at 105 (collecting cases). Under Rule 23, Plaintiffs must show that all of the requirements of Rule 23(a) are satisfied. *Prinzo v. Hannaford Bros. Co., LLC*, 343 F.R.D. 250, 251 (D. Mass. 2023), *citing Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003). They also must satisfy at least one element of Rule 23(b). *Id*.

Rule 23(a) requires a showing that: (1) the class is so numerous that joinder of all members is impractical (numerosity), (2) there are questions of law or fact common to the class (commonality), (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality), and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a). Under Rule 23(b)(1)(B), Plaintiffs must show that prosecuting separate actions by individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or

would substantially impair or impede their ability to protect their interests. All of these requirements are satisfied.

First, to satisfy the commonality requirement of Rule 23(a)(1), a class must be "so numerous that joinder…is impracticable." Fed. R. Civ. P. 23(a)(1). This is a "low threshold," which is generally satisfied when the putative class exceeds 40 members. *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009) (citation omitted). Here, the class includes thousands of individuals, so it is sufficiently numerous.

Second, to satisfy Rule 23(a)(2)'s requirement that "questions of law or fact" be "common to the class," Plaintiffs must identify an issue that by its nature "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes v. Wal-Mart Stores, Inc.*, 564 U.S. 338, 350 (2011). "Rule 23(a)'s requirement of commonality is a low bar, and courts have generally given it a 'permissive application.'" *Prinzo*, 343 F.R.D. at 252, *quoting Fleming v. Select Portfolio Servicing*, 342 F.R.D. 361, 365 (D. Mass. 2022). And "[c]ommonality demands only the existence of a "*single issue common* to all members of the class." *Id.*, *quoting Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l.*, Ltd., 247 F.R.D. 253, 264 (D. Mass. 2008) (emphasis in original). Here, the question of the Defendants' liability is plainly common to all members of the proposed class, as is the methodology for determining damages.

Third, the typicality requirement of Rule 23(a)(3) is "met when the representative's claims arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory." *Garcia-Rubiera*, 570 F.3d at 460. *See also Tracey*, 2018 WL 5114167, at *4. Putative class members need not share

identical claims to satisfy typicality. *Garcia v. E.J. Amusements of N.H., Inc.*, 98 F. Supp. 3d 277, 289 (D. Mass. 2015). *See also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 69 (D. Mass. 2005) ("For purposes of demonstrating typicality, '[a] sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'"), *quoting In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 686 (S.D. Fla. 2004). The District Court in *Tracey* found typicality satisfied because the plaintiffs asserted claims on behalf of their university retirement plan, and the claims all "relate[d] to defendants' alleged imprudent management of the Plan." *Tracey*, 2018 WL 5114167, at *4-5. In the same way, the claims of Professor Brookins are typical of the claims of members of the proposed class.

Fourth, Rule 23(a)(4) mandates that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Two factors must be satisfied to fulfill this prerequisite. "First, there must be an absence of potential conflict between the named plaintiff and the potential class members, and, second, the counsel chosen by the class representative must be "qualified, experienced, and able to vigorously conduct the proposed litigation.'" *Glass Dimensions, Inc.*, 285 F.R.D. at 179, *quoting Adair v. Sorenson*, 134 F.R.D. 13, 18 (D. Mass. 1991). Professor Brookins does not have any known or potential conflict with members of the proposed class. Class Counsel, meanwhile, have extensive experience as class counsel, so they are able to protect the interests of the class. (Churchill Aff., Ex. 4).

Finally, Rule 23(b)(1)(B) requires a showing that prosecuting separate actions by or against individual class members would create a risk of "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their

14

ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). Courts have recognized that ERISA fiduciary breach claims are "paradigmatic examples" of claims appropriate for certification under subsection (b)(1)(B). *Tracey*, 2018 WL 5114167, at *6. *See also In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009). The Advisory Committee Notes to Rule 23 itself single out cases charging "a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries" as examples of cases appropriate under Rule 23(b)(1)(B) in discussing the 1966 amendments to the rule. *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (highlighting this example of a case that raises the risk of impairment under Rule 23(b)(1)(B)).

5.  **The proposed notice satisfies Fed. R. Civ. P. 23.**

The proposed Class Notice was drafted to comply with the requirements of Fed. R. Civ. P. 23(e)(1)(B), which requires notices to class members who will be bound by the settlement. It also includes the information identified in Rule 23(c)(2)(B), about, among other things, the nature of the action; the definition of the class certified; the class claims, issues, or defenses; and the right to object to the proposed settlement. Because the settlement class here is proposed to be certified under Rule 23(b)(1), there is no right to request exclusion in this case, so those provisions from Fed. R. Civ. P. 23(c)(2)(B) are not required, yet they are provided nonetheless. More generally, Class Counsel have attempted to ensure that class members fully understand the background and context of the proposed settlement.

If approved, the Class Notice will be sent by first-class mail (and, where possible, by electronic means) to the last known addresses of all members of the subclasses. To the extent any mailings are returned as undeliverable, the settlement administrator will use appropriate databases to skip-trace outdated addresses and will promptly resend the notices and claim forms

to those updated addresses. There will also be a settlement website, at which members of the subclasses can obtain information relevant to the case, including a copy of the notice and Class Counsel's request for fees and costs.

## Conclusion

For these reasons, Professor Brookins respectfully requests that the Court preliminarily approve the proposed class settlement and approve issuance of the Class Notice, all as set forth in the proposed order attached as Ex. 3.

                        Respectfully submitted,

                        OSCAR T. BROOKINS, individually and as the representative of a class of similarly situated persons, and on behalf of the Northeastern University Retirement Plan,

                        /s/ *Stephen Churchill*
                        Stephen Churchill, BBO #564158
                        Osvaldo Vazquez, *admitted pro hac vice*
                        FAIR WORK, P.C.
                        192 South Street, Suite 450
                        Boston, MA 02111
                        Tel.   (617) 607-3260
                        Fax.   (617) 488-2261
                        steve@fairworklaw.com
                        oz@fairworklaw.com

Dated: October 15, 2025

**CERTIFICATE OF SERVICE**

      This will certify that on this date I served a copy of this document, by ECF, on counsel for the Defendants.


Dated: October 15, 2025                /s/ *Stephen Churchill*
                                                Stephen Churchill