**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

Oscar T. Brookins, individually and as the representative of a class of similarly situated persons, and on behalf of the Northeastern University Retirement Plan,

Plaintiff,

v.

Northeastern University; Northeastern University 403(b) Investment Committee; and John and Jane Does 1-10,

Defendants.

No. 1:22-cv-11053-NMG

**PLAINTIFF'S REQUEST FOR AWARD OF ATTORNEYS' FEES AND COSTS**

Pursuant to Fed. R. Civ. P. 23, Plaintiff Oscar T. Brookings, individually and in his representative capacities for a class of similarly situated persons and on behalf of The Cape Cod Healthcare 403(b) Partnership Plan ("Plan"), requests an award of attorneys' fees and costs in the amount of $242,000 in connection with the proposed settlement that resolves the above-captioned class action lawsuit.

**Background**

On June 30, 2022, Plaintiff commenced this Action, challenging the Defendants' exercise of fiduciary duties as to the Plan, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA). The Complaint alleges two principal claims: that the Defendants, acting through Northeastern 403(b)'s Investment Committee ("Committee"), failed to monitor allegedly excessive fees charged by the Plan's two recordkeepers (TIAA and Fidelity), and that the Defendants failed to monitor the Plan's investment options. The Complaint defines the class as,

"All persons, except Defendants and their immediate family members, who were participants in, or beneficiaries of the Plan, at any time between June 30, 2016 through the date of judgment."

On September 15, 2022, the Defendants filed a motion to dismiss. (ECF No. 22). Plaintiff opposed the motion (ECF No. 25), and the parties subsequently filed multiple notices of supplemental authority (ECF Nos. 29, 30, 37, 41, 42). On November 20, 2023, the case was reassigned. (ECF No. 47). On December 20, 2023, the Court ordered the Defendants to file a renewed, consolidated motion to dismiss (ECF No. 53), which the Defendants did on January 5, 2024 (ECF No. 54). Plaintiff again opposed the motion. (ECF No. 56). On April 17, 2024, the Court denied the motion to dismiss, except to the extent Plaintiff sought to hold Defendants liable for maintaining TIAA as a recordkeeper in light of a Securities and Exchange Commission-New York Attorney General investigation (ECF No. 73). On August 16, 2024, the Court denied Defendants' motion to certify that order for interlocutory appeal. (ECF No. 78).

Following those rulings, and in order to explore a voluntary resolution, the Defendants voluntarily produced extensive documentation requested by Plaintiff, including information considered by the Committee from 2016 onwards, agendas and minutes of Committee meetings, and the responses to and analysis of a request for proposals to potential recordkeepers in 2018. The Defendants also arranged for an interview of personnel from the Committee's investment advisor, SageView Advisory Group ("SageView").

On March 10, 2025, the Court notified the Parties of an initial scheduling conference, to be held on April 15, 2025. (ECF No. 79). Because the Parties already had begun the process of exploring a negotiated resolution, they filed a motion to continue the conference, which the Court allowed. (ECF Nos. 80, 81). The Court ultimately held an initial scheduling conference on July 15, 2025, (ECF No. 92), scheduling a trial for July 2026.

After exchanging and discussing initial positions as to settlement, the Parties and their counsel participated in a day-long, in-person mediation on August 18, 2025, with Judge Mitchell Kaplan (Ret.), a former justice of the Massachusetts Superior Court. As a result of the mediation, the Parties reached an agreement as to the material terms of a classwide settlement.

**Summary of Proposed Settlement**

The Agreement provides that the above-captioned action be settled by a payment of $725,000 ("Gross Settlement Amount"), thereby avoiding the need for further litigation. The Agreement proposes that the net settlement proceeds, after fees and costs, be allocated to members of the proposed settlement class based on the amount of assets they held in the Plan during the class period. That allocation is equitable, because fees were charged as a percent of a participant's assets.

The Agreement further proposes that one-third of the Gross Settlement Amount be allocated for attorneys' fees and costs, that an additional amount be allocated for administrative expenses of the settlement, including costs for a required review by an independent fiduciary,[1] fees for a third-party settlement administrator and associated recordkeeper costs, and a modest service award of $5,000 for the named plaintiff.

The Agreement also provides that the Defendants will continue to retain the services of a qualified consultant to advise the Committee as to the Plan's recordkeeping and administrative fees and services and the Plan's investments for a period of five years.

---

[1] The independent fiduciary will be charged with determining whether to approve and authorize the settlement on behalf of the Plan, pursuant to Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended.

**Argument**

Courts frequently favor an award of attorneys' fees from a common fund, as called for by the proposed settlement in this case. As the Supreme Court has explained:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole. . . . Jurisdiction over the fund involved in the litigation allows a Court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citations omitted).

When awarding fees from a common fund, the "percentage of the fund" method has substantial advantages over the lodestar method. As the First Circuit observed, the percentage method is less burdensome to administer than the lodestar method. *In re Thirteen Appeals*, 56 F.3d 295, 307 (1st Cir. 1995). The court also endorsed the percentage method because it is result-oriented, and therefore promotes a more efficient use of attorney time; a loadstar method, in contrast, might give attorneys an incentive to spend as many hours as possible on the litigation and might discourage early settlements. *Id.* When using the percentage method, courts routinely approve fee awards that represent one-third of the settlement fund.[2]

An award of one-third of the fund is consistent with the vital role that contingency arrangements play in making legal counsel available to employees who cannot afford hourly fees. Unlike traditional firms that receive hourly fees on a monthly basis, employment counsel

---

[2] There are numerous examples of cases in which a one-third fee was approved. *See, e.g., Roberts v. TJX Companies, Inc*., 2016 WL 8677312, at *13–14 (D. Mass. Sep. 30, 2016) (awarding fees of one-third of $4,750,000 common fund); *Scovil v. FedEx Ground Package System, Inc*., 2014 WL 1057079, at *5 (D. Me. Mar. 14, 2014) (awarding fees and costs equal to one-third of $5,794,200 common fund); *Beckman v. KeyBank, N.A*., 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (awarding fees of 33% of $4.9 million common fund) (citations omitted); *In re Relafen Antitrust Litigation*, 231 F.R.D. at 82 (awarding fees equal to one-third of $75,000,000 settlement fund).

who take cases on contingency often spend years litigating cases (typically while incurring significant out-of-pocket expenses for experts, transcripts, travel, etc.), without receiving any ongoing payment for their work. Sometimes fees and expenses are recovered; other times, despite hundreds of hours of work, nothing is recovered. Indeed, class counsel in this case have litigated other cases on a contingency basis in which they expended over $500,000 in attorney time and well over $100,000 in expert fees or other costs and recovered a small fraction of those fees and costs. In other cases, they have recovered nothing, even after years of litigation.

This type of practice is viable only if attorneys, having received nothing for their work on some cases, receive more in other cases than they would if they charged hourly fees. Courts have long recognized this reality. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate"); *In re Union Carbide Corp. Consumer Products Business Securities Litigation*, 724 F. Supp. 160, 168 (S.D.N.Y. 1989) ("Contingent fee arrangements implicitly recognize the risk factor in litigation and that the winning cases must help pay for the losing ones if a lawyer who represents impecunious plaintiffs, or those plaintiffs not so fully committed as to put their own money where their mouth is, will remain solvent and available to serve the public interest.").

By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them. That access is particularly important for the effective enforcement of public protection statutes, such as the laws at issue in this case. It is well recognized that "private suits provide a significant supplement to the limited resources available

to [government enforcement agencies] for enforcing [public protection] laws and deterring violations." *Reiter v. Sonotone Corp*., 442 U.S. 330, 344 (1979).

To the extent the Court deems it necessary or appropriate to compare the requested award for fees and costs to class counsel's accrued fees and costs, the requested award is plainly within the range of reasonableness. To date, class counsel have incurred total fees of over $228,600. (Affidavit of Stephen Churchill, Ex. 1, ¶ 10). These fees have been incurred performing work on a lengthy case investigation, researching and drafting a highly-detailed and technical complaint, researching and briefing an opposition to a complex motion to dismiss, reviewing and analyzing extensive records produced by the Defendants, interviewing the Plan's investment advisor, engaging in lengthy settlement discussions (including a day-long mediation), drafting and negotiating a formal settlement agreement, drafting a motion for preliminary approval of the proposed agreement, and handling the ongoing settlement approval and administration process. (*Id*.). Class counsel expect to spend considerably more time with the remaining settlement approval and administration process. (*Id*.).

Under longstanding law, class counsel in common fund cases are entitled to recover a multiplier of their fees and costs. *See, e.g., In re Puerto Rican Cabotage Antitrust Litigation*, 815 F. Supp. 2d 448, 465 (D.P.R. 2011) (citing decisions approving multipliers of up to 3.5 times the lodestar) (citations omitted). Indeed, "courts routinely impose enhanced common fund awards to compensate counsel for litigation risk at the expense of beneficiaries who did not shoulder this risk." *Brundle v. Wilmington Trust, N.A*., 919 F.3d 763, 786 (4th Cir. 2019), *citing In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases" and "[t]here is nothing unfair about contingency enhancements in common fund cases because of the equitable

notion that those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it").

Here, the requested award of $242,000 represents a multiplier of less than 1.1. By the time this case is concluded, the final amount of fees incurred by class counsel likely will *exceed* the requested award, resulting in a multiplier of less than one. Other courts have approved multipliers that are substantially greater than the current multiplier of 1.1. *See, e.g., New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (approving 8.3 multiplier), *citing In re Rite Aid Corp. Sec. Litig.,* 146 F.Supp.2d 706, 736 n.44 (E.D. Pa. 2001) (lodestar multiplier in the range of 4.5 to 8.5 was "unquestionably reasonable"). *See also Beckman,* 293 F.R.D. at 481-82 (S.D.N.Y. 2013) (approving multiplier of 6.3 and noting that "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers") (collecting cases). As a result, the requested fees in this case are reasonable and in line with settled authority.

**Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that the Court approve an award of attorneys' fees and costs in the amount of $242,000 from the settlement fund in this case.

OSCAR T. BROOKINS, individually and as the representative of a class of similarly situated persons, and on behalf of the Northeastern University Retirement Plan,

/s/ *Stephen Churchill*

Stephen Churchill, BBO #564158
Osvaldo Vazquez, BBO #711808
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel. (617) 607-3260
Fax. (617) 488-2261
steve@fairworklaw.com
oz@fairworklaw.com

Dated: December 22, 2025

**CERTIFICATE OF SERVICE**

I certify that on this date a copy of the foregoing document was served via electronic mail on counsel of record and will be posted on the settlement website that is available to all settlement class members, at https://www.simpluris.com/case-search/.

Dated: December 22, 2025

/s/ *Stephen Churchill*
Stephen Churchill